IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA AQUINO, Personal Representative of
the Estate of FRANCISCO LOPEZ ANTONIO;
and ANSELMO CABALLERO,

                Plaintiffs,                        Civ. No. 6:25-cv-01167-MC

        v.                                  OPINION & ORDER

UNION PACIFIC RAILROAD COMPANY, a
Deleware Corporation; ANDREY I. KRASKOV,
a Resident of Oregon; MIHAIL
INHNATIYEVICH KRASKOV, a Resident of
Oregon; and FOMA I. KRASKOV, a Resident
of Oregon,

                Defendants.

_____

MCSHANE, Judge:

This matter comes before the Court on a Motion to Remand filed by Plaintiffs Teresa

Aquino, as Personal Representative of the Estate of decedent Francisco L. Antonio, and Anselmo

Caballero. Pls' Mo. Remand, ECF No. 9. Because Defendant Union Pacific Railroad Company

failed to establish that removal of this negligence action was proper, Plaintiffs' Motion to Remand

(ECF No. 9) is GRANTED.

**BACKGROUND**

In August 2023, Plaintiff Anselmo Caballero, Francisco L. Antonio[1], and two others went

to their former job site to collect past wages. Notice of Removal Ex. 1 at 4, ECF No. 1. The job

site consists of greenhouses used for agricultural work and is located on a farm in Gervais, Oregon.

---

[1] As noted above, one of the Plaintiffs here is the personal representative of Antonio's estate.

1 – OPINION & ORDER

*Id*. The land on which the job site sits is owned by Defendants Andrey I. Kraskov, Mihail I. Kraskov, and Foma I. Kraskov. *Id*. To reach the job site, the group had to cross a railroad crossing that bisects the property. *Id*. Defendant Union Pacific controlled and operated that crossing. *Id* at 8. Prior to traversing across the railroad tracks, the group stopped the car because vegetation and farm equipment obstructed the view of the tracks on their left side. *Id*. at 5. No safety features such as crossing arms or flashing lights were present at the crossing. *Id*. As the car proceeded to cross the tracks, a northbound train operated by Union Pacific struck the car. *Id*. At impact, the train was traveling at approximately 40 miles per hour. *Id*. Three of the four workers in the car died on impact. *Id*. at 6. The only survivor, Plaintiff Anselmo Caballero, sustained permanent injuries causing him to be airlifted for emergency medical treatment. *Id*.

Plaintiffs originally filed this action in Multnomah County Circuit Court against Union Pacific and the Kraskov Defendants. Notice of Removal Ex. 1. Union Pacific removed the case based on diversity jurisdiction. Notice of Removal 2. The Kraskov Defendants are citizens of Oregon. *Id*. at 3. Union Pacific argues that because Plaintiffs cannot establish a cause of action against the Kraskov Defendants, they are fraudulently joined merely to defeat diversity jurisdiction and removal was permissible. *Id*. at 3.

## LEGAL STANDARD

A civil action filed in state court that is removeable solely on the basis of diversity of citizenship may not be removed if any of the defendants are a citizen of the state where the action was filed. 28 U.S.C. § 1441(b)(2); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005). Original jurisdiction exists when either complete diversity exists, or when the action arises out of federal law. 28 U.S.C. §§ 1331, 1332. Complete diversity means that no plaintiff is a citizen of the same state of any defendant and the amount in controversy *exceeds* $75,000. 28 U.S.C. § 1332. A

corporation is a citizen of any state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A natural person is a citizen of a state where they are domiciled. 28 U.S.C. § 1332(a)(2); *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001). District courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined. *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018).

In determining if joinder is fraudulent or not, the court may look beyond the pleadings. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1064, 1067-68 (9th Cir. 2001) (looking to affidavit submitted to establish fraudulent joinder because travel agent's statements were mere puffery insufficient to rise to negligent misrepresentation). The court looks at the provided evidence to assess if the non-diverse defendant has "no real connection with the controversy." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). If a plaintiff cannot state a cause of action against a resident defendant, joinder is fraudulent and the court "may ignore the presence of that defendant for the purpose of establishing diversity." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Absent fraud in the pleadings, joinder is fraudulent when Plaintiff lacks the ability "to establish a cause of action against the non-diverse party in state court." *GranCare,* 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1044).

If, following removal, the court determines that it lacks original jurisdiction, and that the case was therefore improperly removed, it must remand the matter to state court. 28 U.S.C. § 1447(c); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 8 (1983). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). "The 'strong presumption' against removal jurisdiction

means that the defendant always has the burden of establishing that removal is proper." *Id.* (quoting *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 (9th Cir. 1990)).

## DISCUSSION

The Court's determination of whether the Kraskov Defendants have been fraudulently joined hinges on Union Pacific's ability to overcome the weighty burden of establishing that removal is proper. To overcome that burden, Union Pacific must show that there is *no possibility* that a state court would find that the Plaintiffs state *any* cause of action against the Kraskov Defendants. *See GranCare*, 889 F.3d at 548 (noting that "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.") (quoting *Hunter*, 582 F.3d at 1046).

As noted, Plaintiffs bring claims of negligence and premises liability against the Kraskov Defendants. Notice of Removal Ex. 1. Negligence consists of conduct falling below the established standard for the protection of others against the unreasonable risk of harm. *Woolston v. Wells*, 297 Or. 548, 557 (1984). Under Oregon state law the standard of care is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances. *Id.* Additionally, because this action involves premises liability, "the nature and scope of the defendant's liability to the plaintiff depends on the plaintiff's status as a licensee, an invitee, or a trespasser on the defendant's property." *Towe v. Sacagawea, Inc.*, 357 Or. 74, 87 (2015).

When deciding if a defendant has been fraudulently joined, a court must not explore the merits of the claims but rather determine merely if it is at least possible that a state court would find a plaintiff states any claim against a non-diverse defendant. *GranCare*, 889 F.3d at 549. A defendant establishes fraudulent joinder by demonstrating that the plaintiff "fails to state a cause

of action against a resident defendant, and the failure is obvious according to the settled rules of the state[.]" *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 2007). "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *GranCare*, 889 F.3d at 549.

In *GranCare*, a woman died after a stay at a nursing facility. *Id.* at 457. Her heirs brought an action against the facility and the facility's administrator for claims including elder abuse, negligence, and wrongful death. *Id.* The defendants removed the case to federal court, arguing that the facility administrator was fraudulently joined solely for the purpose of defeating diversity. *Id.* The district court granted plaintiffs' motion to remand, concluding that "fraudulent joinder should not be found if there is any possibility that a plaintiff could state a claim against the defendant even if the complaint actually fails to state a claim." *Id.* The Ninth Circuit affirmed, holding that the "possibility" standard was met because the facility administrator's alleged actions in the complaint fell within the range of conduct determined by California courts to qualify as reckless neglect. *Id.* at 551. The Ninth Circuit reached this result despite the fact that the non-diverse defendant there submitted a declaration not only denying the allegations, but also "emphasized that her role is largely administrative." *Id.*

Here, Plaintiffs allege that the Kraskov Defendants knew, or in the exercise of reasonable care should have known, that workers routinely used the railroad crossing to access the jobsite. Plaintiffs also allege that the Kraskov Defendants failed to provide a safe means of ingress and egress in allowing vegetation and farm equipment to obstruct visibility at the crossing. Specifically, Plaintiffs allege:

5 – OPINION & ORDER

As the vehicle approached the Crossing, it stopped. Dense vegetation and *parked farm equipment obstructed the view of the tracks to the left of the vehicle.* The Crossing lacked basic safety features: it was not equipped with crossing arms, flashing lights, or audible alarms to alert motorists to oncoming trains—despite being located in an active rail corridor with an average of six (6) trains traveling daily at speeds between thirty and sixty miles per hour (30-60 mph).

\* \* \* \*

Thick, overgrown vegetation and *parked farm equipment near the tracks obstructed the view of approaching trains for motorists* traveling in a generally northeasterly direction along the private roadway. These same obstructions also prevented the train personnel from detecting vehicles entering The Crossing in time to slow or stop.

Notice Removal Ex. 1 at 5, 7 (emphasis added).

Union Pacific makes a host of arguments in support of their theory that Plaintiffs fraudulently joined the Kraskov Defendants. For example, Union Pacific argues that: as a matter of law, a railroad crossing constitutes a warning of danger; Plaintiffs understood the danger as they had crossed the tracks on numerous occasions; Oregon Administrative Rules impose a duty on the railroad, not the landowner, "to control vegetation on the railroad's right-of-way"; and the Oregon Department of Transportation imposes duties on the railroad, not the property owner, to provide warning signs and gates at private railroad crossings. Resp. 7–9. Therefore, Union Pacific argues that regardless of whether Plaintiffs were business invitees or mere trespassers, "Plaintiffs cannot establish the landowners owed any duty to them as a matter of law. *Id.* 7. The Court disagrees.

As outlined above, Plaintiffs specifically allege that the Kraskov Defendants allowed parked farm equipment to obstruct Plaintiffs' view of the tracks. Notice Removal Ex. 1 at 5, 7. With respect to these specific factual allegations, Union Pacific argues:

Plaintiffs also allege "farm equipment" and "debris" significantly impaired visibility and they include in their Complaint an overhead view of the train on the crossing after the collision. But their allegations are specious. There was no equipment or debris obstruction at the time of the collision, as is obvious by view of a screenshot from the train as it approached the crossing. As noted by the Supreme Court in *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–99 (1921),

6 – OPINION & ORDER

a removing defendant can submit "proof" showing that a resident defendant had "no real connection with the controversy[.]" This is a controlled stop with a clear view down the right of way. Plaintiffs' allegations that the Kraskov Defendants obstructed their view of the train or the train's view of them is belied by the evidence.

Resp. 8 (alteration in original) (internal citations omitted).

As discussed above, courts may look at certain documents beyond the pleadings to assess if the non-diverse defendant has "no real connection with the controversy." *See Morris*, 236 F.3d at 1067–68; *Ritchey*, 139 F.3d at 1318 (quoting *Wilson*, 257 U.S. at 97). In submitting a color copy of a picture of the accident along with a screenshot from the front of the train right before the accident, however, Union Pacific asks the Court to delve into the merits of Plaintiff's claims; i.e., to determine at this stage whether or not parked farm equipment obstructed Plaintiffs' view of the oncoming train. Resolution of such genuine dispute of material facts, however, is beyond the scope of a fraudulent joinder determination. *See Hunter*, 582 F.3d at 1044 (noting that "a summary inquiry is appropriate only to identify the presence of discrete *and undisputed* facts that would preclude plaintiff's recovery against the in-state defendant") (quoting *Travis v. Irby*, 326 F.3d 644, 573–74 (5th Cir. 2003).

Assuming that the Court may, in fact, review the color photograph and screen shot submitted in the Quinn Declaration, the pictures merely reinforce that there is a disputed question of fact. Specifically, whether parked farm equipment obstructed Plaintiffs' view of the oncoming train—and, correspondingly, the train operator's view of Plaintiffs' vehicle. The color aerial photograph of the accident scene in fact shows one parked vehicle and what looks to be parked farm equipment in the area directly between the oncoming train and Plaintiffs' vehicle. Quinn Decl. Ex. 1 at 8. Additionally, the photograph includes several large trees, with very full canopies obstructing the Court's view of the area under and around the trees. Even assuming that Union Pacific is correct that the Kasparov Defendants had no duty to trim that allegedly overgrown

7 – OPINION & ORDER

vegetation, the Court is unable to determine, due to the thickness of the canopies, if additional parked farm equipment was present at the time of the accident. Critically, this dense vegetation is immediately adjacent to the crossing, directly in Plaintiffs' line of sight up the train tracks (in the direction of the oncoming train). In short, the aerial photograph *supports* Plaintiffs' allegations regarding parked farm equipment.

Similarly, the black and white screenshot from the front of the train does not help Union Pacific. While the image shows Plaintiffs' vehicle, the image does not indicate how far the vehicle was in front of the train or how fast the train was moving. The screenshot does not allow the viewer to determine if the image is from ten seconds before the accident or perhaps only one second before the accident. Additionally, the image shows Plaintiffs' vehicle just beyond the dense canopy of vegetation filling the entire right side of the image. The vegetation is so thick that, once again, the Court is unable to determine if parked farm equipment is under the trees as alleged by Plaintiffs.

Intertwined with the duty the Kraskov Defendants owed to Plaintiffs is the question of Plaintiffs' status as business invitees or trespassers, or something in between. In their Complaint, Plaintiffs allege that the Kraskov Defendants knew "that agricultural workers employed by their tenant . . . routinely used The Crossing to access the greenhouses located on the north side of the property. The Kraskov defendants permitted this ongoing use of The Crossing as part of the daily operations occurring on their land." Notice Removal Ex. 1 at 8. Plaintiffs allege that the Kraskov Defendants knew that their tenant failed to pay workers and knew that these workers, like Plaintiffs, would return to the property to collect their unpaid wages. *Id.* "Despite actual or constructive knowledge, the Kraskov defendants failed to provide a safe means of ingress and egress to the job site. *They allowed . . . farm equipment to obstruct visibility at The Crossing . . .*

and continued to operate the Premises in a manner that exposed workers to reasonably foreseeable and unreasonably dangerous risks of harm." *Id.* (emphasis added).

Those allegations almost certainly elevate Plaintiffs beyond that of mere trespassers. The allegations, accepted as true, are consistent with Plaintiffs' allegations that they were "invitees" or "business invitees." If so, the Kraskov Defendants had a duty to warn Plaintiffs of any dangerous conditions on the property. *Appleyard v. Port of Portland*, 311 Or. App. 498, 508 (2011). Alternatively, it is at least possible that the state court could conclude that Plaintiffs were invitees. *See Parker v. Hult Lumber & Plywood Co.*, 260 Or. 1, 8 (1971) (under "the invitation test," "the person coming upon the premises is an invitee if the occupier, expressly or impliedly, has led such person to believe that the premises were intended to be used by visitors for the purpose which Plaintiff is pursuing and such use was not only acquiesced in by the occupier but was in accordance with the intention or design with which the place was adapted and prepared. Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety."). As acknowledged by Union Pacific, "[a] licensee comes onto land with the owner's permission, for the licensee's own purposes. . . . The duty owed to a licensee is less and the landowner is only liable if he knows or has reason to know of a condition that involves an unreasonable risk of harm and should expect that the risk of harm would not be discovered, the owner fails to exercise reasonable care to make the condition safe or warn of the condition, and *the licensee does not know of the condition or risk involved*." Def.s' Resp. 6 (emphasis in original) (internal citations omitted). The allegations plausibly indicate that the Kraskov Defendants at least impliedly invited Plaintiffs to drive over the crossing to collect their unpaid wages. At this early stage, Union Pacific has not established that the state court would (1) find that Plaintiffs were

trespassers and (2) conclude that Plaintiffs knew of the increased risk of danger created by the parked farm equipment.

As demonstrated above, Plaintiffs' allegations allow for the possibility that parked farm equipment obstructed Plaintiffs' view of the railroad tracks. Although Plaintiffs were aware of the inherent risk of the railroad crossing, there are at least plausible allegations that the parked farm equipment greatly increased the risk of harm to one crossing the tracks. Stated differently, there are no allegations indicating that Plaintiffs appreciated the increased risk of harm due to the parked farm equipment and vehicles restricting their ability to perceive an oncoming train. Additionally, it is at least plausible that the Plaintiffs would not have realized that the parked farm equipment would prohibit the operator of the train from seeing vehicles approaching the crossing and reduce the train's speed accordingly.[2] These are factual disputes beyond the scope of the pending motion.

At oral argument, Defendants argued that the screenshot, along with allegations that the Plaintiffs stopped at the crossing's stop sign, preclude liability of the Kraskov Defendants. Defendants believe this to be definitive; establishing that Plaintiffs had a clear line of sight to the oncoming train. Defendants argued that the screenshot confirms that there was no farm equipment blocking Plaintiffs' view. The Complaint, however, does not allege that the crossing had a stop sign. Indeed, no stop sign at the crossing was obvious to the Court during the playing of the video. More significantly, the Complaint alleges only that the vehicle stopped as it "approached the Crossing." Notice Removal Ex. 1 at 8. These allegations are consistent with a theory that the vehicle stopped under the canopy—as opposed to directly before the crossing itself—and that the

---

[2] Additionally, the allegations present a question of fact regarding whether the property was open to the public. This is true despite the undisputed fact that the road is private property. *See Towe*, 357 Or. at 103 ("the significant issue is not whether the access road was privately or publicly *owned*; it is whether the road, although private, was open to public use. It is on that point—not the private ownership of the road—that the evidence is mixed and gives rise to a question of fact for a jury's resolution."). If, in fact, the road was open to the public, the Kraskov Defendants may have merely owed a duty of ordinary care to Plaintiffs. *Id.*

vehicle only proceeded after the farm equipment blocked the view of the oncoming train. Finally, the video defense counsel played for the Court at the oral argument confirmed that the vehicle *did not* stop at the crossing. The video too is consistent with the theory that Plaintiffs' view of the oncoming train was obstructed by farm equipment and vehicles. This is not, of course, to say that Plaintiffs will prevail on their claims against the Kraskov Defendants. Instead, the video merely confirms that it is *possible* that the state court would find that Plaintiffs present a plausible claim against the Kraskov Defendants.

The Court does not address the merits of Plaintiffs' claims. Instead, the Court concludes that Plaintiffs have shown a possibility that a state court would find that Plaintiffs stated a cause of action against the Kraskov Defendants under Oregon's negligence law. At this stage, Defendants have not overcome their burden of establishing that removal is proper. *See Hunter*, 582 F.3d at 1046 ("if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.") (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (*per curiam*).

## CONCLUSION

Plaintiff's Motion to Remand (ECF No. 9) is GRANTED. This matter is remanded to the Circuit Court of Oregon for the County of Multnomah in Case Number 25-CV-22967.

IT IS SO ORDERED.

Dated this 19th day of November, 2025.

___/s/ Michael McShane_____
MICHAEL J. MCSHANE
UNITED STATES DISTRICT COURT JUDGE